IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

RAPHAEL R. HAMILTON,        )
                                     )
         Petitioner,       )
                                     )
vs.                       )      Case No. 14-CV-0270-CVE-PJC
                                     )
JOE M. ALLBAUGH, Director,[1]  )
                                   )
         Respondent.   )

## OPINION AND ORDER

Before the Court is a 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner

Raphael R. Hamilton, a state prisoner appearing pro se.  Respondent filed a response to the petition

(Dkt. # 7), and provided the state court record necessary for resolution of Petitioner's claims (Dkt.

## 7, 8).  Petitioner filed a reply (Dkt. # 11).  For the reasons discussed below, the petition is denied.

### *BACKGROUND*

Petitioner challenges his conviction and sentence entered in Tulsa County District Court,

Case No. CF-2011-2923.  In resolving Petitioner's claims raised on certiorari appeal, the Oklahoma

Court of Criminal Appeals (OCCA) provided a summary of background facts.  See Dkt. # 7-3.

Petitioner fails to rebut the OCCA's statement of facts with clear and convincing evidence and it is,

therefore, presumed correct.  See 28 U.S.C. § 2254(e)(1).   Therefore, this Court adopts the

following factual summary as its own:

---

[1]     Petitioner is in custody at Davis Correctional Facility, a private prison.  Pursuant to Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, the proper party respondent in this matter is Joe M. Allbaugh, Director of the Oklahoma Department of Corrections. Therefore, Joe M. Allbaugh, Director, is substituted in place of Robert C. Patton, Director, as party respondent.  The Clerk of Court shall note the substitution on the record.

The record reveals that Hamilton was charged with First Degree Murder or, in the alternative, Felony Murder (Count I) and Robbery with a Firearm (Count II). At a jury trial held on May 14-16, 2012, the state presented the testimony of four witnesses against Hamilton. Through these witnesses the State established that on July 15, 2011, Randolph Ney was found stabbed to death in his home at 1135 Florence Avenue in Tulsa, Oklahoma. One of the witnesses, Stephanie Abbott, was Hamilton's girlfriend at the time of Ney's death. Abbott testified that on the evening of July 10, 2011, she received a phone call from Hamilton who was calling from a number that was unknown to her. Hamilton whispered to Abbott that he needed her to pick him up at 11th and Florence. She drove to that location as instructed and when she saw Hamilton she stopped and he got in her car. He was carrying a briefcase that she had not seen before and his hand was wrapped in a white towel. There was blood on the towel and he had a deep cut on one of his knuckles. Hamilton told Abbott that he had been in a fight with a guy with whom he had been "doing mushrooms" and the guy was alive when he left. About a week later, Abbott heard on a news report that a body had been found in a residence at 11th and Florence. Abbott became scared and acted like she had not seen the story until Hamilton asked her if she had seen the news. She initially denied hearing about the story but a few hours later talked with Hamilton about it. He admitted knowing the victim from his work and to calling her with the victim's hone. Hamilton's phone call to Abbott using Ney's phone led the police to Abbott who told them what she knew. After Abbott was finished testifying and had been excused, the court went into recess.

When court reconvened, defense counsel announced that he had spoken with Hamilton and that Hamilton had expressed his desire to enter a blind plea of guilty to the crime of First Degree Felony Murder. The trial court held a plea hearing and accepted Hamilton's guilty plea to First Degree Felony Murder and dismissed the robbery charge.

(Dkt. # 7-3 at 1-3). The record further reflects that, on July 11, 2012, after the trial judge accepted Petitioner's blind plea of guilty, Petitioner was sentenced to life without the possibility of parole. See Dkt. # 8-1 at 25. At the time of his blind plea, Petitioner was represented by attorneys Adam Haselgren and Matt Tarvin. See Dkt. # 7-4 at 1.

Petitioner filed a timely motion to withdraw his blind plea. On August 13, 2012, the trial judge held a hearing on the motion. See Dkt. # 8-2. During the hearing on the motion to withdraw

2

plea, attorneys M. J. Denman and John Dunn represented Petitioner.  See id. at 1.  At the conclusion

of the hearing, the trial judge denied the motion.  Id. at 47.

Represented by attorney Laura M. Arledge, Petitioner filed a petition for writ of certiorari

in the OCCA.  See Dkt. # 7-2.  Petitioner raised the following proposition of error:

Proposition I:    Mr. Hamilton's guilty plea was not voluntary and knowing and was
entered in violation of his rights under the Fifth and Fourteenth
Amendments to the United States Constitution and Article II, § 7 of
the Oklahoma Constitution.

Id. at 2.  In an unpublished Opinion, filed July 15, 2013, in Case No. C-2012-767 (Dkt. # 7-3), the

OCCA denied the petition and affirmed the Judgment and Sentence of the district court.

Petitioner commenced this federal action by filing a pro se petition for writ of habeas corpus

(Dkt. # 1).  Petitioner alleges, as he did on certiorari appeal, that his guilty plea was not voluntary

and knowing and was entered in violation of his rights under the Fifth and Fourteenth Amendments

to the United States Constitution and Article II, § 7 of the Oklahoma Constitution.  Id. at 4.  In

response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief.

See Dkt. # 7.

## *ANALYSIS*

**A.      Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion

requirement of 28 U.S.C. § 2254(b).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent

concedes, see Dkt. # 7 at 2 ¶ 7, and the Court agrees, that Petitioner fairly presented his habeas claim

to the OCCA on certiorari appeal.  Therefore, the Court finds that Petitioner satisfied the exhaustion

requirement of 28 U.S.C. § 2254(b).

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Cullen v. Pinholster, 563 U.S. 170, 184-85 (2011); Williams v. Taylor, 529 U.S. 420 (2000).

**B.     Claim adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice."  White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)).  The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Id. (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

4

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 98; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Further, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Petitioner's habeas claim on certiorari appeal. Insofar as Petitioner claims a violation of the United States Constitution, his claim will be reviewed pursuant to § 2254(d). To the extent Petitioner also claims a violation of the Oklahoma Constitution or Oklahoma statutory law, the claim is denied because it are not cognizable on federal habeas corpus review. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

Petitioner alleges that he should have been allowed to withdraw his guilty plea as it was not voluntarily and knowingly entered. See Dkt. # 1 at 4. In support of his claim, Petitioner cites to argument presented at the hearing on his motion to withdraw plea where he explained that "he felt pressured by his trial attorney to enter a plea, he felt he did not have enough time to consider the

plea, and, as a result, it was not freely and voluntarily given.  Further, he had not been taking his prescribed medicine, and he believed his sentence was excessive."  See id. at 10-11.  Petitioner also alleges that "he was not aware and/or advised of all the State's evidence against him prior to entering his guilty plea" and that "[h]e entered his guilty plea as a result of inadvertence, ignorance, misunderstanding, misapprehension and without deliberation."  Id. at 13 (internal quotation marks omitted).  In rejecting Petitioner's claim on certiorari appeal, the OCCA cited Cox v. State, 152 P.3d 244, 251 (Okla. Crim. App. 2006), overruled on other grounds by State v. Vincent, 371 P.3d 1127 (Okla. Crim. App. 2016), and found that "[b]ased upon the record which indicates that Hamilton entered his blind plea knowingly and voluntarily, we find that the district court did not abuse its discretion in denying Hamilton's motion to withdraw his plea."  See Dkt. # 7-3 at 5.

"It is beyond dispute that a guilty plea must be both knowing and voluntary. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  Parke v. Raley, 506 U.S. 20, 28-29 (1992) (internal quotation marks and citations omitted).  In considering a habeas petition, or after the judgment of conviction upon a guilty plea has become final, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."  U.S. v. Broce, 488 U.S. 563, 569 (1989).  A strong presumption of reliability is accorded a defendant's in-court statements made when the plea was entered concerning the voluntariness of the plea and his satisfaction with his attorney's performance. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  Id. at 74.

Here, the record supports the OCCA's conclusion that Petitioner's blind plea of guilty was both knowing and voluntary. Petitioner's allegation of feeling pressured by his trial attorney is contradicted by Petitioner's averment, made under oath, that he was satisfied with his attorney's assistance. See Dkt. # 7-1 at 3, ¶ 21. Petitioner also denied having "been forced, abused, mistreated, or promised anything by anyone" to enter his pleas. Id. at ¶ 29.

Also, during the plea hearing, Petitioner denied that anything affected his ability to understand what was going on during the proceeding. See Dkt. # 7-4, Tr. Plea Hr'g at 367. Petitioner affirmed that he understood that the only available sentencing options were life or life without parole, up to a $10,000 fine, and that the sentence would be administered pursuant to the 85% Rule. Id. Petitioner also denied that he had been threatened or promised anything in exchange for entering the guilty plea and admitted that he was guilty of murder in the course of the robbery of Mr. Ney. Id. at 368. Significantly, at the conclusion of that hearing, the trial judge made a finding of fact that Petitioner's guilty pleas were freely and voluntarily entered, and that Petitioner had knowingly and voluntarily waived his constitutional rights. See id. Petitioner fails to present clear and convincing evidence to rebut the state court judge's finding of fact that Petitioner's pleas of guilty were knowingly and voluntarily entered. Therefore, the finding of fact is presumed correct. 28 U.S.C. § 2254(e)(1).

At the hearing on the motion to withdraw plea, three (3) witnesses testified. First, Petitioner's lead attorney, Adam Haselgren, testified that he did not "threaten, coerce, or put any pressure upon" Petitioner and that Petitioner seemed "very much alert and aware" during the change of plea proceeding. See Dkt. # 8-2, Tr. Mot. Withdraw Plea Hr'g at 19. Mr. Haselgren further testified that he "absolutely" believed that Petitioner was making a free and voluntary choice when

he entered his plea.  Id. at 20.  Next, co-counsel Matthew Tarvin testified that Petitioner had not expressed dissatisfaction with Mr. Haselgren, nor had Petitioner been forced to enter the blind plea of guilty.  Id. at 28, 30.  Mr. Tarvin described Petitioner's demeanor as "calm and collected" during the change of plea proceeding.  Id. at 33.  Lastly, Petitioner testified that his attorney did not ask him about any medications that he may have been taking and that he was "not really" satisfied with his attorneys' representation.  Id. at 37.  However, Petitioner admitted that, when he talked to his father on the jail phone after entering his blind plea, he told his father that he entered the plea because it was his best chance of getting a life sentence.  Id. at 40.  Petitioner did not complain to his father of being depressed or about his attorneys.  Id. at 40, 41.  At the conclusion of the hearing on the motion to withdraw plea, the trial judge denied the motion.  Id. at 47.

In this habeas action, Petitioner fails to identify how his attorneys' preparations for trial were deficient or explain how he was otherwise pressured into entering a blind plea.  Because Petitioner's unsupported claim that he entered a blind plea of guilty under pressure is contradicted by the record, Petitioner's claim fails.  Petitioner also fails to point to any evidence suggesting that, even if he had not been taking medicine prescribed for depression, he did not understand what was happening during entry of the blind plea.  In addition, because Petitioner heard the trial testimony of four (4) witnesses prior to changing his plea, Petitioner's claim that he was unaware of the State's evidence against him is baseless.  Petitioner has failed to demonstrate that the OCCA's adjudication of his claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  For that reason, the petition for writ of habeas corpus is denied.

C.      **Certificate of Appealability**

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. <u>See</u> <u>Dockins v. Hines</u>, 374 F.3d 935, 938 (10th Cir. 2004). A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The Clerk of Court shall note the substitution of Joe M. Allbaugh, Director, in place of Robert C. Patton, Director, as party respondent.

2.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.      A separate judgment in favor of Respondent shall be entered in this matter.

4.      A certificate of appealability is **denied**.

**DATED** this 30th day of March, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

9